May it please the court. I'm Ani Bidwal, representing appellant in this case, Ms. Cassandra Pollreis. Your Honors, observer individuals in this country can observe the police without being seized so long as these individuals are compliant and don't present a threat to the officers or others. As this court has stated on numerous occasions, the use of any force in such circumstances is objectively unreasonable. Despite this clearly established law, Officer Marzolf drew a taser on Ms. Pollreis while she was at the scene peacefully observing an encounter between the officer and her children. Ms. Pollreis spoke calmly and clearly. She kept her distance and complied with the officer commands. Regardless, Officer Marzolf threatened Ms. Pollreis with a dangerous weapon after she complied, ordered her to get back, and ordered her to confine herself to her house, which she did. These actions by Officer Marzolf constituted an unreasonable seizure. What's more, Your Honors, this unreasonableness was clearly established. As this court stated as far back as 1983, force can only be used to overcome physical resistance or threatened force. The district court incorrectly held that qualified immunity shielded the officer in this case. What force was used in this case? Your Honor, Officer Marzolf pointed a taser at Ms. Pollreis. Are there any cases that indicate that the pointing of a gun is the use of excessive force in this context? Your Honor, we have cases involving pointing of a gun and we also have cases involving a flashlight that was dangerously raised above a plaintiff's head. Qualified immunity does not require a hair splitting of this nature. As long as there is a principle is clearly established, then the officer is fairly warned and has sufficient notice that what they're about to do is unconstitutional. So the answer is there hasn't been a case involving a taser? Your Honor, there hasn't been in this circuit a case involving pointing of a taser. There has been a case involving a flashlight, threateningly raised above a plaintiff's head, and there are also war cases, as you know, involving threatened use of a gun. And so do you not think that there is a difference, at least for the clearly established prong, the difference between a lethal weapon, you've sort of in your briefing used the word weapon, but is there a difference between a lethal weapon and a taser? I mean, I understand that tasing can result in a death, but I don't think it's called a lethal weapon. You know, something like a pepper spray, a threatened pepper spray. Does that, is that included? Is that clearly established that you can't, what if he threatened to pepper spray her and pointed it right at her? Yeah, Your Honor, if he threatened her with a pepper spray and pointed it at her, that would constitute excessive force. Under the precedent involving a flashlight, right, Bauer versus Norris is a case where a plaintiff raised, I'm sorry, an officer raised a flashlight above a plaintiff's head, and this court clearly stated that the use of any force, so long as an individual is compliant, so long as an individual is not resisting and is not threatening, the use of any force is objectively unreasonable. That's why, to your point, Your Honor, in terms of pepper spray, some of those distinctions will eventually go to the jury, right? And when jury is analyzing the damages, it will look at these kind of things. But at this point, at the qualified immunity analysis, what is important to answer is whether officer was fairly warned that threatening a person with a weapon would violate the Constitution. And a situation involving a person who is complying and who is not threatening, in those kind of situations, this court has clearly stated, since at least 1983, that that is unreasonable. So you rely a lot on this, I think it's Bauer, with the flashlight. Have there been any other cases that, I think maybe you cite one case that cites to Bauer, sort of how, that's been a long time ago, and a lot of, we've gotten instruction from the United States Supreme Court in this area, clearly established. What is our recent, how is our recent handling of Bauer? Your Honor, your recent handling of Bauer is Wilson v. Lamp, and that's when you were looking at whether it would be, if the officer were fairly warned that pointing a weapon is unconstitutional. And you looked at it as basically whether an officer knows, a reasonable officer knows that threat, that using force on an individual who is not threatening is unconstitutional. And you cited to Bauer as an example of a case that clearly established that such use of force would be unconstitutional. In that case involved pointing a gun at the back of someone's head for some period of time, is that the one? That's Rochelle. Your Honor, Wilson is similar in that sense as well. That involved a situation involving child abuse, and officers were looking for somebody who, and they thought that the suspect was in that car. And they approached the car, and they recognized that the individual was not a suspect, but they still continued pointing the weapon. And the individuals were not under any threat, just like Ms. Paul-Reese. They did not resist, and this Court said that it was clearly established that the use of force on those kind of individuals is unconstitutional. And it did it consistent with Supreme Court case law like Kissela v. Hughes, right? Even in excessive force type of cases, it still can be that general principles of law constitute fair warning. And the general principle of law here is that use of force on somebody who is complying, on somebody who is non-threatening, is objectively unreasonable. And that was the principle that this Court used in Wilson v. Lamp to say that the officers should have known, a reasonable officer should have known, that pointing a dangerous weapon constitutes excessive force and is unconstitutional. Haven't we looked at, was it Clark that we've looked at that case again and sort of said, well, made some distinctions on whether, I think that might have been a first-prong case, maybe Clark. Does that affect what we're doing here? Yes, you know, Clark v. Clark is distinct in three ways, and it kind of is indicative of how the circuit really looks at these issues. Clark v. Clark involved an individual, it was a car chase. An individual was potentially armed. He was also sitting in the driver's seat of a car. And the officers finally caught up to him, and they threatened him with a gun. And this Court said that that threat of a gun was reasonable because it wasn't clear that this individual was complying. And it wasn't clear that the individual was non-threatening because there was potentially a weapon in the car, and they no indications like that were present. And that's really how this circuit looks at these cases. There isn't one case where it involves an individual who is compliant, who is non-resisting, who is non-threatening, where this Court held that the use of force was objectively reasonable. Every case out there that involves the use of force, there was some sort of threat involved. There was some sort of non-compliance potentially involved. There was some sort of resistance involved. In this case, Ms. Paul Rees presented herself respectfully and responsibly. She announced herself clearly. She kept her distance from the officer. When the officer said, get back, Ms. Paul Rees stepped sideways, increasing the distance between herself and the officer, as the video So she complied the second he told her to get back. Then he told her to get back again, and she did increase her distance again. And then he pointed a taser at her. And in that kind of a situation, the use of force is unreasonable. And cases in this circuit has clearly established that for a very long time. And, Your Honors, respondents in their brief argue that Ms. Paul Rees did not comply. But we have a video that indicates Ms. Paul Rees increasing her distance between the officer and herself when he told her to get back, even before he pointed a taser at her. And at best, Your Honors, that kind of a question for the jury to determine. The question here on qualified immunity analysis is whether, given Ms. Paul Rees complied, and given she did not resist and did not present threat, was it reasonable for Officer Martzhoff to use force against her by threatening her with the taser? If there are no further questions, I will remain the rest of the time for rebuttal. Thanks very much. Thank you, Ms. Bidwell. Ms. Monahan. Good morning, Your Honors. May it please the Court, I'm Sarah Monahan. And on behalf of the appellee, Lamont Martzhoff, I'm requesting this Court affirm the District Court's grant of summary judgment in Lamont Martzhoff's favor with respect to the claim that he used excessive force when he pointed a taser at Ms. Paul Rees. Because, as the District Court below correctly stated in its order on summary judgment below, existing law within this circuit did not and does not put an officer on notice that the mere drawing and pointing of a taser constitutes excessive force. Did the District Court make a conclusion on the first prong of qualified immunity analysis as to whether there was a constitutional violation? Yes. The District Court cited to itself, in fact, which was a 2014 case, Brown v. Boone County, where the District Court itself in just 2014 said that the pointing of a taser at an individual does not violate the Fourth Amendment. And at the very least, it doesn't violate clearly established law. So both of those conclusions then are before us. I mean, it has to be both for there to be a plaintiff's verdict. So the conclusion by the District Court that there was no constitutional violation is also before us. Is that correct? Well, yes, Your Honor. And the case law establishes that, the current case law clearly establishes that it was constitutional for him to point his taser at Ms. Paul Rees under these circumstances. What case is that? Well, that would be the United States v. Fisher, where the United States Supreme Court held that it is lawful for an officer to brandish a weapon in order to protect his own personal safety during the course of a detention. Counsel, does that case stand for the proposition that it was not a seizure or that it was not an unreasonable seizure? That case stands for the proposition that it's not an unreasonable detention. So I'd like to look at the first prong here and the first part of the first prong. Why isn't this a seizure by show of authority? This is not a seizure by show of authority because, according, first of all, to the United States Supreme Court in the United States v. Mendenhall, that case says that a seizure of a person occurs when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. And then, in addition, we have the Haddari D case. Right, so let me ask you about this. So for at least a brief time, Ms. Porree stood with a weapon pointed at her before she asked, where do you want me to go? She was told, after some more back and forth, get back in your house. And the case law, as I understand it, says that a seizure is a single act, not a continuous fact. So why is there not a seizure, at least for that period of time, when she stood there with a weapon pointed at her before she was told to get back? Her freedom of movement was not restrained at any point. She had a weapon pointed at her. She did have a weapon pointed at her. Did a reasonable person think they could just ignore the officer? Well, the officer was telling her to get back and move away, and she was ignoring the officer. There was some back and forth in between before she said, where do you want me to go? And then, after a little while, get back in your house. So I'm talking about that period of time, just at that period of time. His order to her was to get back, and that was what he was wanting her to do. And she eventually complied. Yeah, she didn't comply. Which is required for a seizure. Yes, she didn't comply when he ordered her to move back. That doesn't mean she wasn't free to move back. She wasn't free to walk away. She didn't comply. Then he pulled his weapon, and then she did comply. So why is that not a seizure? Her freedom of movement was never restrained. His only order to her, which, yes, she did not comply with, but the only order that he ever gave to her was to get back, stay back, don't approach me, stay away. That was the only order that he gave to her. What if it had been an actual gun he pointed at her? Would that have been a seizure? No, because her freedom of movement was not restrained by that order. He didn't say, freeze, get on the ground, put your hands in the air, show me your hands. He said, get back, leave. She was free to leave the whole time. She chose not to. She chose not to comply with his order. Her freedom of movement was never restrained under HADAR-ID. I think many people would feel very much constrained by having a firearm pointed at you. Well, if his order is to leave, you're not constrained. If the order is to get back, stay back, leave, you're not constrained. Your freedom of movement is not constrained in any way. The order is simply to walk away and leave. She can't say that her freedom of movement was restrained in any way by the order, even though she did not comply with the order four times. But even assuming that this court determines that Ms. Polrace was subjected to a seizure when Officer Marzov pointed his taser at her, the United States Court of Appeals for the Eighth Circuit has never recognized the threat and use of a taser as a constitutional violation. And, of course, as we previously discussed, the district court below held in just 2014 that merely pointing a taser does not constitute a constitutional violation, and that was in Brown v. Boone County. What was the justification here for the use of the taser? It wasn't actually fired, but what was the justification for bringing it into the conversation? In this situation, the justification for just brandishing the taser was the threat to Officer Marzov's security at the point when he brandished his taser. And this court has held that the use of force is justified in cases where there's a threat. Do you believe that that was use of force, pointing the taser at her? Was that use of force? Well, I don't believe that... I don't believe that it was, because there was no seizure, first of all. Assuming a seizure, was that use of force? It was a... I guess it could be considered a show of authority, but again, as I've argued in my brief, this police has no injury at all based on Officer Marzov pulling his taser out and pointing it in her direction. Is that required under this claim? It is required under this claim for excessive force, and in my brief, I cited to the Grider case to support that argument. Grider actually cites to an older case, Dawkins v. Graham, where this court said that in order to proceed on a claim for excessive force under the Fourth Amendment, there has to be actual injury. That was later clarified in Chambers with the holding that for excessive force. It's both. What about the case where the plaintiff had a gun held to their head for an extended period of time? There was no injury there. I would argue, though, there was not an injury there, but if you're talking about Wilson v. Lamp, the court in that case did specifically note that they had claimed emotional injury in that case. They did actually make that claim and present evidence of that in that case. Here, we don't even have any evidence of that. What about de minimis injury? A de minimis injury pursuant to, of course, Chambers v. Pennycook is enough to support a claim for excessive force under the Fourth Amendment. The injury just has to be de minimis. Scrapes and bruises are enough, but like the court originally said in Dawkins v. Graham, there has to be an injury, and even if it's just de minimis, that's enough. Here, Ms. Polrice hasn't alleged any injury whatsoever. She had a taser pointed in her direction. She wasn't touched. She has no injury from that. She's not even alleging any sort of emotional damages. She had a taser pointed in her direction. That's it. I would argue that she hasn't presented evidence to proceed on a use of force claim based on that allegation. Again, going back to what I was saying, it is clearly established in this circuit that a threat, even if it is considered a use of force, it is clearly established in this circuit that a threat to an officer's safety can justify the use of force. What was the threat here? The threat was that Officer Marzov was conducting an investigation that was presenting circumstances that were tense, uncertain, and rapidly evolving. He was detaining what he believed were two suspects that were fleeing known violent felons, known to carry firearms, who had just participated in a high speed chase with the police that ended in their vehicle being disabled and then they were fleeing. They were actually, where the detention was happening, they were two houses down from where the gang member suspects lived. Officer Marzov was engaging in that detention of what he believed to be very highly dangerous suspects. He was the only officer on scene. He had no backup. This police approached him while he was trying to control the scene while he waited on backup. These were two teenage boys who were complying with his instructions and they were both on the ground? Yes, but this court has already addressed whether or not this situation was under control. This court has held that his detention of those two boys was reasonable and it was lawful because the situation... I'm not asking about whether it was reasonable or lawful. I'm just trying to figure out just how much of a threat did Ms. Polrice present? Well, from Officer Marzov's perspective, he had no backup. He was detaining who he believed to be two and he didn't have the chance to identify them because he didn't have backup. He was identifying them, wasn't he? Well, he wasn't required to rely on her. As I said, they were actually two houses down from where the suspects, one of the suspects lived and one of them had just been observed. One of the suspects' mother lived two houses down. It wasn't unreasonable for Officer Marzov not to take Ms. Polrice at her word right there on the scene in the middle of this tense, rapidly evolving situation. That just wasn't unreasonable for him to not believe. The law that says that an officer is required to just believe any witness that walks up on the scene when they're claiming to identify somebody, there is no law that says he's required to believe a witness in that situation and let it affect how he's conducting the detention. I'm running out of time. In closing, I will just say that the Supreme Court holdings and instructions with respect to qualified immunity are clear in excessive force claims that there has to be a case that squarely governs the facts at issue. There does not have to be a case factually on point to clearly establish a law in use of force cases. There is no case here. The appellant has not met her burden in establishing that Officer Marzov violated clearly established law in this case. Thank you, Your Honors. Thank you, Ms. Monahan. Your Honors, I want to address four points, one involving the district court ruling, another one the question of seizure, the third one is about minimum injury, and the fourth one is the facts of this case. With regard to the district court's ruling, the district court really did not address the first prong of the qualified immunity test. It did not discuss whether pointing a taser at somebody constitutes a violation, constitutes excessive force or unreasonable seizure. But aren't we on de novo review here? Can't we look at that anyway? Yes, absolutely. You absolutely can, Your Honor. But the district court basically said, and I quote, it is true that the Eighth Circuit has developed its case law regarding the threatened use of firearms, but there have been no such developments surrounding the threatened use of tasers. Qualified immunity does not require the weapons by weapons analysis. We have a case from the United States Supreme Court, McCoy v. Alamo, that was remanded with instructions back to the Fifth Circuit, where the Fifth Circuit originally said that there is a difference between punching, between tasing, and between pepper spraying. And the court, after it looked at the Taylor v. Riojas case and said that you can't look at qualified immunity with this degree of specificity, then remanded this other case for the Fifth Circuit to take another look. Because qualified immunity focuses on fair warning. Which case was that? So McCoy v. Alamo, it's in our brief, as well as Taylor v. Riojas. But McCoy is particularly instructive because it involved pepper spraying of a prisoner, and the court said that that's very different from punching the prisoner or from tasing the prisoner. And Judge Costa dissented, and his dissent was very much about how qualified immunity does not require a weapon by weapon comparison. And the case went back to the Supreme Court, remanded basically for reconsideration in light of Taylor v. Riojas. That's another case that involved distinction between six days in a feces-filled cell versus three days in a feces-filled cell. And the Supreme Court again said these kind of factual distinctions is not what qualified immunity is about. Qualified immunity is about fair warning that something that you're doing is going to offend the Constitution. The district court here did not get into the prong one, but it distinguished incorrectly based on tasers and guns. And that distinction, that analysis needs to be reversed. With regards to the point on seizure, Ms. Polris was absolutely seized by this show of authority, and she unquestionably complied the second the officer pointed the weapon. In fact, she complied even before the officer pointed the weapon. As video shows, the second officer, Martzoff, told her to get back. She stepped sideways and increased the distance between herself and the officer. But in terms of seizure by show of authority, this is a classic one, where a weapon is pointed and you comply with the officer's commands. We have Florida v. Bostic, a classic Supreme Court case that talks about a reasonable individual, given the totality of the circumstances, how would they feel and whether they would feel restraint if they saw an officer pointing a weapon at them or acting in a manner that shows his authority. So this case, Your Honor, involves a classic seizure and unreasonable at that. As to the point about minimum injury, this Court many times has reiterated that no minimum injury requirement exists. Even in original Polris case involving the seizure of the boys, this Court said that no minimum injury is required. When this is for the purposes of the totality of circumstances analysis. With regard to the opposing counsel's point about the situation not being under control with regard to boys, that does not mean that the situation was not under control with regard to Ms. Polris. With regard to Ms. Polris, the situation was absolutely under control. She was a complying, non-threatening, non-resisting observer. And the video shows that. With regard to those kind of individuals, the case law in this circuit has been clearly established. You can't threaten force on them. You can't use force on them. You can't unreasonably seize them. With these points, I see that my time is about to be up. So if there are no further questions, I just ask that the Court appreciates both counsel's presentations to the Court and argument this morning. And we also appreciate the briefing which you've submitted. We'll take the case under advisement.